436 So.2d 1001 (1983)
Michael D. SOTOLA, Appellant,
v.
STATE of Florida, Appellee.
No. 82-767.
District Court of Appeal of Florida, Fifth District.
August 4, 1983.
Rehearing Denied September 1, 1983.
*1002 James B. Gibson, Public Defender, and Brynn Newton, Asst. Public Defender, Daytona Beach, for appellant.
Jim Smith, Atty. Gen., Tallahassee, and Mark C. Menser, Asst. Atty. Gen., Daytona Beach, for appellee.
COBB, Judge.
The appellant, Michael D. Sotola, appeals from his conviction on two counts of murder and one count of armed robbery. Of the various errors urged by the appellant, only one merits discussion and consideration by this court: whether or not the trial court erred in seating an alternate juror after jury deliberations had begun. Insofar as we can determine, this is a question of first impression in a Florida state court.
The factual setting giving rise to this issue occurred as follows: on the fifth day of the trial, at 8:15 P.M., the twelve-member jury, following instructions, retired to deliberate. At that time, the two alternate jurors were discharged by the court. They went home. At 11:59 P.M. the jury reentered the courtroom with a request to hear part of the fingerprint expert's testimony played back. The court decided that the jury could hear the recording, and this was done shortly after midnight. Thereafter, the court received a message that the jury had asked to come back in, which the court assumed to be for a question, and the jury was returned to the courtroom at 1:22 A.M.
The transcript of the proceedings that ensued thereafter until return of the verdict reads as follows:
BY THE COURT: Okay. Bring them in.
(The Bailiff returned the Members of the Jury to the courtroom at 1:22 a.m., after which the following proceedings were held in the presence of the Members of the Jury):
BY THE COURT: Okay. Members of  Foreman, you have a question of the Court?
BY THE FOREMAN: No, I don't. I have a statement to make to the Court. Your Honor, it has come to light to the Jury certain information that we feel you need to know before we go further.
BY THE COURT: Okay.
BY THE FOREMAN: It has been stated by a Member of the Jury that that person has read the newspaper each day of trial.
BY THE COURT: And that's affecting your deliberations?
BY THE FOREMAN: Beg your pardon?
BY THE COURT: That affecting your deliberations in the case?
BY THE FOREMAN: We don't know that it is, but we want you to be aware of it.
BY THE COURT: Okay. Attorneys approach the bench.
BY THE FOREMAN: We  we feel we could be deliberating but we thought at this point in time you should be aware of it.
BY THE COURT: Okay; I appreciate that. Mr. Fox?
*1003 (Counsel for the respective parties to the cause approached the bench and the following proceedings were held out of the hearing of the Members of the Jury):
BY THE COURT: What do you want to do?
BY MR. FOX [Defense Counsel]: I don't know.
(The following proceedings were held within the hearing of the Members of the Jury):
BY THE FOREMAN: Your Honor, let me add to that, this person has not divulged to anyone else at this time what he read  what she read.
BY THE COURT: Okay.
(The following proceedings were held at the bench out of the hearing of the Members of the Jury):
BY MR. PHILLIPS [Prosecutor]: I think he's got to go. Is there any provision for  the only thing we can do is recall one of the Alternates. I don't know if that's 
BY MR. FOX: Quite frankly, at this time of day, Judge, I don't know how to properly respond to the issue and I would ask that perhaps  now, my gut reaction is to say, let's come back tomorrow.
BY THE COURT: What for?
BY MR. FOX: Well, either 
BY THE COURT: He hasn't divulged anything. Why don't we just excuse that Juror and come back tomorrow with an Alternate Juror.
(The following proceedings were held within the hearing of the Members of the Jury):
BY THE FOREMAN: Your Honor, I don't know if this is pertinent, but we can hear you.
BY THE COURT: Oh, you can.
(The following proceedings were held at the bench out of the hearing of the Members of the Jury):
BY MR. FOX: I don't know whether I should move for a mistrial based on  I  I really don't. I think it is proper grounds for one. I think it's a matter of my client's feelings in that regard and my professional judgment in that regard, and I think at 1:15 a.m., after a week-long trial my professional judgment has been severely diminished; but I just briefly discussed it with my client as to what he wished to do and he's not certain, either.
BY MR. PHILLIPS: I would only point out to the Court the incredible expense that this trial has in fact incurred. If there's any way possible of salvaging the proceedings, if it's a question of mistrial, if we can avoid that in any way possible. If in fact the Appeals Court says it's a mistrial; it should have been granted, fine. Then, we'd have to retry it anyway, but if there's any way without the granting of the mistrial and starting over again, I think judicial economy would certainly dictate any alternative procedure that is available, with Counsel's objection noted.
BY THE COURT: Well, he didn't make his objection yet. For the record, Mr. Fox, he's not weatherbeaten and a little younger than we are.
(The following proceedings were held within the hearing of the Members of the Jury):
BY THE FOREMAN: Your Honor, I'd like 
BY THE COURT: Can you all hear?
BY THE FOREMAN: Somewhat.
(The following proceedings were held at the bench out of the hearing of the Members of the Jury):
BY MR. PHILLIPS: You want to just break it tonight and why don't we just have that individual just not return tomorrow and replace that individual with an Alternate. That way that individual would not be embarrassed. It's obviously  he's either told them or he's slipped something, and I think that would be an acceptable way to do it, have those 11 
BY THE COURT: Then, somebody will have to call the Alternate Jurors and have them not to read any papers, make sure 
*1004 BY MR. PHILLIPS: Correct. That one black lady, I think she was the next Juror, was she not?
BY MR. FOX: I  I don't know. I frankly do not remember who was Number One or who's Number Two, but whoever is the next.
BY THE COURT: Either that or we can have 11, but you want 12?
BY MR. FOX: I think he has to have 12.
BY THE COURT: I think so, too. That's what we're going to do.
BY MR. FOX: I've not moved for mistrial and had it denied.
BY THE COURT: No.
BY MR. FOX: I  I was going to say, I'm not certain 
BY THE COURT: Okay; so you haven't. So that's the procedure the Court is going to take. At nine o'clock in the morning we return.
BY MR. PHILLIPS: Is there any reason to come back at nine instead of ten? The Jury is going to be tired; I know that they're tired.
BY MR. FOX: And I  I say  I beg for it.
BY THE COURT: Okay; that's what we'll do.
(The following proceedings were held within the hearing of the Members of the Jury):
BY THE COURT: This is what the Court decided to do. Rather than declare a mistrial, which hasn't been asked for, what we are going to do is this. Since we've spent this whole week in trial and so forth, we'd like to have a verdict but, of course, we can't  the person who has disregarded the orders of the Court shouldn't be sitting on  deliberating this case. So what we're going to do is this: Have a recess now, have the 11 of you who have not read anything about the case come back tomorrow morning at ten o'clock, at which time the one who has read the paper don't come back. We'll deal with that matter a little later; and we're going to call the two Alternates right now to make sure they won't read any papers and have one of the Alternates, the next one, come back and join you all tomorrow at ten o'clock and maybe you can decide it then. Okay. So the rest of you all don't read anything tonight or anything else.
BY THE FOREMAN: The time tomorrow, again?
BY THE COURT: Ten o'clock. Is that good with everybody?
BY JUROR ROSENBERG: Make it eleven.
BY A JUROR: We can go home?
BY THE COURT: Pardon me?
BY JUROR ROSENBERG: Make it eleven.
BY A JUROR: We can go home?
BY THE COURT: Oh, you're going home. What was the question?
BY JUROR ROSENBERG: Make it eleven.
BY THE COURT: Well  okay.
BY A JUROR: I have a friend with me, dinner tomorrow.
BY THE COURT: And you all know 
BY THE FOREMAN: Your Honor, is it possible to have the Foreman have a conference with you?
BY THE COURT: Sure. Mr. Fox?
(Counsel for the respective parties to the cause and the Foreman of the Jury approached the bench and the following proceedings were held out of the hearing of the Members of the Jury):
BY THE FOREMAN: Okay. Here's our problem.
BY THE COURT: Now, here's the point. Don't tell us how the Jury is leaning. Just tell 
BY THE FOREMAN: Well, I'm not going to do that.
BY THE COURT: Okay.
BY THE FOREMAN: The person in question has been somewhat unique throughout our 
*1005 BY THE COURT: Is he the older gentleman?
BY THE FOREMAN: That's true.
BY THE COURT: Okay; what is 
BY THE FOREMAN: All right. He has just indicated he will be here.
BY THE COURT: Well, I'm going to just tell him he's not going to be here.
BY THE JUROR: But you don't know who it is, yet.
BY THE COURT: Well, I know now. That's okay. I'm going to ask him when you get back there. Do you know his name?
BY THE FOREMAN: Rosenberg. It's Albert Rosenberg.
BY THE COURT: Rosenberg; okay.
BY MR. PHILLIPS: It's too much of a trial for him.
BY THE FOREMAN: I ask you to do one thing. Ask each of us that question.
BY THE COURT: Okay.
BY MR. PHILLIPS: I appreciate your candor.
BY THE FOREMAN: There's a problem there.
(The Foreman of the Jury resumed his seat in the jury box, Mr. Phillips and Mr. Fox remaining at the bench and the following proceedings were out of the hearing of the members of the Jury):
BY MR. FOX: My client insisted that I move for mistrial and I make the motion.
BY THE COURT: Motion denied.
BY MR. FOX: Ten o'clock tomorrow?
BY THE COURT: Yes.
(The following proceedings were held within the hearing of the Members of the Jury):
BY THE COURT: Okay. For the record  we want to get it straight that the person who read the newspaper has not divulged any of the information to any other Jurors; is that correct?
BY THE FOREMAN: That is true, sir.
BY THE COURT: The Jurors all nodded in the affirmative. Mr. Foreman, who is the person who indicated they read the newspaper?
(The Foreman of the Jury indicated Juror Rosenberg).
BY THE COURT: Mr. Rosenberg. Okay. We'll talk about that later, Mr. Rosenberg, but you other eleven Jurors, tomorrow at ten o'clock. Mr. Rosenberg, you don't have to come back tomorrow. It would be best for you later on; and the rest of you are excused until ten o'clock in the morning and we'll get the Alternates back in and find out about them.
(The Bailiff escorted the Members of the Jury from the courtroom at 1:29 a.m. and during the process of the Jurors walking from the courtroom, Juror Rosenberg approached the side bench and the following proceedings were held):
BY JUROR ROSENBERG: I read the headlines, unfortunately. I didn't read the whole story. For a million dollars I couldn't tell you what was in it.
BY THE COURT: You don't have to come back tomorrow.
BY JUROR ROSENBERG: I don't have to come back?
BY THE COURT: No.
BY JUROR ROSENBERG: Thank you.
(The Jurors had left the courtroom and the following proceedings were held out of the presence of the Members of the Jury):
BY THE COURT: Mr. Fox and Mr. Phillips, someone  I'm going to ask the Clerk  Mr. Fox 
BY MR. FOX: Yes.
BY THE COURT: I'm going to ask the Clerk to ask  to call tonight 
BY MR. FOX: Yes.
BY THE COURT:  the two Alternates to make sure they don't read anything 
BY MR. FOX: Both?
BY THE COURT:  and have them both come back tomorrow at ten o'clock and we'll query them about if they read anything about this case.
*1006 BY MR. FOX: Okay.
BY THE COURT: At ten o'clock.
BY MR. FOX: Right.
BY THE COURT: Will you do that, Ruth?
BY THE CLERK: I'll give it a try.
BY THE COURT: Ruth, call them right now in case they don't have a phone, and then a Deputy or somebody can go by and tell them not to read anything and be here at ten o'clock in the morning. Okay. The Court will be in recess until ten o'clock.
(The Court was in recess at 1:30 a.m. until 10:10 a.m., March 13, 1972 when the Court, Counsel and the Defendant returned to the courtroom. Also present in the courtroom were the two Alternate Jurors, Launa Cotton Bellamy and Joe Harris. The following proceedings were held):
BY THE COURT: For the record, it's 10:09 this morning, this Saturday, March 13th. We're gathered here because last night after 1:30 the Foreman of the Jury advised the Court that one of the Jurors may have read something in the Ocala Star-Banner about this case and, therefore, the Court adjourned the trial at that time, but I don't know if both lawyers were present but the Juror who did read a portion  and all of the Jurors said they did not listen to anything he said  told the Court this. Mr. Brandies.
BY THE COURT REPORTER: This was as the Jurors were leaving the courtroom and he walked up here and leaned over and told the Court  and I was here standing up and I wrote down what he said. "I read the headlines, unfortunately. I didn't read the whole story. For a million dollars I couldn't tell you what was in it."
BY THE COURT: Okay. That's what he said. So in an abundance of caution, the Court now  those two Alternates  the two Alternates who were in the trial before, I asked the Clerk who was the first Alternate Juror.
BY THE CLERK: Mrs. Bellamy.
BY THE COURT: Mrs. Bellamy. Mrs. Bellamy, you sat through the whole trial:
BY JUROR BELLAMY: Right.
BY THE COURT: I ask you that, have you read or heard anything about this case since you left?
BY THE JUROR: No.
BY THE COURT: During the whole trial have you read or heard anything about this case except what you heard in this courtroom?
BY THE JUROR: No, sir.
BY THE COURT: Any questions by the State?
BY MR. PHILLIPS: The State has none, Your Honor.
BY MR. FOX: The Defense has none.
BY THE COURT: Okay. Then, the Court is going to take the Alternate Juror and ask the second Alternate to wait a few minutes in the lobby, in the hallway, until we see  for a few minutes.
BY JUROR HARRIS: All right, Your Honor.
BY THE COURT: All right. I'm going to ask the Jury to come in and advise them what we've done and tell them to go ahead with the deliberations.
BY MR. PHILLIPS: Your Honor, I think we probably have no real problem with excusing the second Alternate Juror and just with the admonition that he avoid reading the paper until he's notified that the trial is in fact over. I think that might be appropriate.
BY MR. FOX: I would concur with that.
BY MR. PHILLIPS: I'm sure he'd like to get to work and  whatever.
BY THE COURT: That's fine. I appreciate you coming in like you did, and calling you at 1:30, two o'clock in the morning, I appreciate it. Thank you very much, sir.
Okay. Would you ask the other Jurors to come in.
(The Bailiff returned the Members of the Jury to the courtroom at 10:14 a.m., after which the following proceedings were held in the presence of the Members of the Jury):
*1007 BY THE COURT: Members of the Jury, what we did is get the two Alternates and Mrs. Bellamy is the first Alternate. She has told the Court under oath that she has not read  in fact, she said she was too tired to read anything. She went to sleep; and she's ready to deliberate with you all on this case, and without objection from the attorneys I think the Jury ought to go back now and start deliberating the case again. Right?
BY MR. PHILLIPS: Yes, Your Honor.
(The Bailiff escorted the Members of the Jury to the juryroom at 10:16 a.m., at which time the court was in recess until 5:14 p.m. when the Court, Counsel and the Defendant returned to the courtroom and the following proceedings were held out of the presence of the Members of the Jury):
BY THE COURT: Okay. Bring the Jury in, please.
(The Bailiff returned the Members of the Jury to the courtroom at 5:17 p.m., after which the following proceedings were held in the presence of the Members of the Jury):
BY THE COURT: Members of the Jury, have you reached a verdict?
BY THE FOREMAN: We have, Your Honor.
On appeal Sotola argues that it was error to deny the motion for mistrial because Juror Rosenberg should not have been replaced, and that the court's action in replacing him violated Florida Rule of Criminal Procedure 3.280, which provides in relevant part:
Alternate jurors, in the order in which they are impanelled shall replace jurors who, prior to the time the jury retires to consider its verdict, become unable or disqualified to perform their duties. (Emphasis added.)
The state responds that the trial court's violation of the rule does not merit reversal for several reasons:
(1) The alternate juror in this case was approved during voir dire by all parties.
(2) The alternate, after being discharged, was recalled, reexamined, and deemed fit to rejoin the jury.
(3) Her conduct was reviewed during the post trial juror interviews and found to be impeccable.
(4) Permitting the case to proceed with the alternate was favorable to retrying this complex case with numerous out-of-state witnesses.
(5) The Berry decision protects the system from aberrant personalities like juror Rosenberg who might abort an entire trial for any cantankerous reason entering his 82-year-old mind.
(6) Sotola was not entitled to any particular jurors in any event. Porter v. State, 388 So.2d 18 (Fla. 4th DCA 1980).
In Berry v. State, 298 So.2d 491 (Fla. 4th DCA 1974), it was held to be fundamental, reversible error to allow an alternate juror to accompany the jury into the jury room during its consideration of the case, even though the alternate juror did not participate in the deliberations and even though the defendant did not object until after the verdict was returned. The rationale of that case turned on the possible effects on a deliberating jury that the presence of a non-juror might have. Accord Fischer v. State, 429 So.2d 1309 (Fla. 1st DCA 1983). But see, United States v. Allison, 481 F.2d 468, 472 (5th Cir.), aff'd. after remand, 487 F.2d 339 (5th Cir.1973), cert. denied, 416 U.S. 982, 94 S.Ct. 2383, 40 L.Ed.2d 759 (1974). Berry is distinguishable from the instant case, which deals not with an additional presence in the jury room but with the substitution of a juror during deliberation.
More instructive in regard to the point here on appeal is United States v. Phillips, 664 F.2d 971 (5th Cir.1981). In that case the trial court replaced an ill juror on the fourth day of deliberations with an alternate, after ascertaining that no extrinsic information had been received by the alternate. In the instant case, Judge Swigert also ascertained this in regard to Juror Bellamy. The trial judge in Phillips instructed *1008 the jury panel, after the addition of the alternate, on its duty to start its deliberations anew  something Judge Swigert failed to do. We will discuss this failure at greater length subsequently in this opinion.
The argument was made, and rejected, in Phillips that impanelling an alternate, after jury deliberations had begun, violated the defendant's right to a trial by a fair and impartial jury under the Sixth Amendment, his due process right, and the Fifth Amendment prohibition against double jeopardy. It was observed that the federal constitutional issues relative to the substitution of jury alternates after deliberations have begun were explored in depth in People v. Collins, 17 Cal.3d 687, 131 Cal. Rptr. 782, 552 P.2d 742 (1976), cert. denied, 429 U.S. 1077, 97 S.Ct. 820, 50 L.Ed.2d 796 (1977). The Collins court found no constitutional obstacles to such substitution where good cause was shown for the dismissal of the juror. In the instant case, the showing of good cause for the dismissal of Rosenberg was not shown  but there was no objection to his dismissal. Indeed, the record strongly suggests defense acquiescence in that dismissal.
The record in the instant case makes it apparent that counsel for Sotola did not object to the discharge of Rosenberg from the jury. Inquiry should have been made of Rosenberg prior to the decision to discharge  but no one seems to have thought of that or objected to the fact it was not done. After initial acquiescence in the court's decision to effectuate the substitution, Attorney Fox moved for a mistrial without stating any basis for the motion. The grounds for such a motion, as well as any objection, should be stated in order to apprise the trial judge of the putative error and to preserve the issue for intelligent review. Castor v. State, 365 So.2d 701 (Fla. 1978); Hufham v. State, 400 So.2d 133 (Fla. 5th DCA 1981). Was the motion for mistrial based on the fact that Rosenberg was being discharged without proper inquiry? Because the remainder of the panel may have been tainted by him? Because the applicable Florida Rule of Criminal Procedure does not provide for substitution of an alternate juror after retirement of the jury? Because the eleven remaining jurors had heard the tape recording a second time and the alternate had not (a problem which could have been corrected easily the next morning)? Or because Attorney Fox was forced to make important strategic decisions at 1:30 A.M., after a strenuous week of trial and was denied a requested continuance until the next morning to refresh his wits? We do not know  and the trial judge did not know because he was not told.
In point of fact, there was nothing to prevent Attorney Fox, on Saturday morning when court reconvened at 10:10 A.M., from registering the several objections which he had failed to raise in the early morning hours when the Rosenberg problem surfaced. He did not do so even after the night's rest, which he had requested as necessary for the exercise of his best judgment. If proper objection had been made, and denied, our conclusion herein well may have been different.
Several cases which deal with the substitution of a juror after deliberations have begun emphasize the necessity for an instruction to the newly-constituted panel to begin its deliberations anew. See, e.g., United States v. Kopituk, 690 F.2d 1289 (11th Cir.1982); Phillips; United States v. Davis, 608 F.2d 698 (6th Cir.1979), cert. denied, 445 U.S. 918, 100 S.Ct. 1280, 63 L.Ed.2d 602 (1980); People v. Collins. In United States v. Evans, 635 F.2d 1124 (4th Cir.1980), cert. denied, 452 U.S. 943, 101 S.Ct. 3090, 69 L.Ed.2d 958 (1981), in a similar situation, the trial judge, after substitution by the alternate juror, simply told the new panel to continue its deliberations and did not specifically instruct them to begin entirely anew. No objection was raised, however, and the appellate court therefore declined to speculate on the existence of prejudice arising from the inadequate instruction.
In the instant case, Judge Swigert's instruction that "the jury ought to go back now and start deliberating the case again" was not a sufficient instruction  but, as in *1009 Evans, there was no objection to it. Moreover, the post-trial interview conducted of the jurors clearly revealed that the new jury, with Mrs. Bellamy, started on Saturday from "scratch," in the words of the jury foreman.
In summary, it appears that Florida has no statutory or procedural authorization for substitution of an empanelled juror after discharge of the alternates and commencement of deliberations. In the event of timely objection, it should not be done. See 84 A.L.R.2d 1288. But there is no constitutional impediment to such substitution, and it is not fundamental error to permit it in the absence of timely and proper objection. In the instant case, inquiry revealed that the alternate juror, Mrs. Bellamy, had not been "tainted" during her absence and that the "new" jury recommenced its deliberation from "scratch," although not instructed to do so. The record and the juror interviews reveal that there were no ulterior or improper motives on the part of the trial judge, the prosecutor, or the other eleven jurors which resulted in the discharge of Juror Rosenberg.
AFFIRMED.
COWART, J., concurs.
FRANK D. UPCHURCH, Jr., J., concurs specially with opinion.
FRANK D. UPCHURCH, Jr., Judge, concurring specially.
This case illustrates the dangers inherent in conducting a trial or requiring a jury to deliberate to the point that the limits of human endurance are tested. When the situation involving juror Rosenberg was brought to the judge's attention, defense counsel asked the trial judge not to require him to make a decision at 1:15 a.m. after a week-long trial because his judgment was severely diminished, but the trial judge elected to discharge Rosenberg. Defendants are entitled to effective assistance of counsel and the rational deliberations of an alert jury. Requiring them to perform their duties to the point of exhaustion (or 1:15 a.m.) would certainly seem to deprive a defendant of both. Had Sotola objected to proceeding at the late hour or moved for a mistrial the next day when the court reconvened and counsel had an opportunity to rest, I think clearly the trial judge would have been in error had he failed to grant the motion. However, because counsel did not object and, in fact, appears to have tacitly agreed to the substitution of the alternate, I reluctantly concur with the majority.
I would also point out that the transcript indicates the trial judge decided to discharge juror Rosenberg before any inquiry of him had been made. This procedure is clearly improper. The mere fact that a juror may have been exposed to publicity about a case does not mean he cannot serve on a jury; rather, the question is whether the juror can lay aside his impressions and opinions and render a verdict based on the evidence presented in court. Robinson v. State, 438 So.2d 8 (Fla. 5th DCA 1983). Here, the belated inquiry shows that juror Rosenberg admitted that he had read the headline and apparently part of a story about the pending case. Whether this is sufficient to uphold the trial court's decision to discharge Rosenberg in light of his statement that he had no recollection of the content of the story[1] has not been preserved for appellate review.
NOTES
[1] See generally United States v. Noah, 475 F.2d 688 (9th Cir.1973), cert. den., Ross v. United States, 414 U.S. 821, 94 S.Ct. 119, 38 L.Ed.2d 54 (1973) and cert. den., Noah v. United States, 414 U.S. 1095, 94 S.Ct. 728, 38 L.Ed.2d 553 (1973) (no error in denial of motion for mistrial where one juror admitted reading headline of newspaper article, headline itself was not prejudicial although article was potentially prejudicial and no evidence that other jurors had read article); Pearson v. United States, 378 F.2d 555 (5th Cir.1967) (no error in denial of motion for mistrial where two jurors had heard portion of news report or had been told of newspaper story but had no recollection of contents). See also Annot., 31 A.L.R.2d 417 (1953).