505 So.2d 497 (1987)
WHAT AN IDEA, INC., d/b/a Biscayne Wine Merchants and Kent Insurance Company, a/k/a Consumer Insurance Group, Appellants,
v.
Jan Boxer SITKO, Appellee.
No. BE-328.
District Court of Appeal of Florida, First District.
March 18, 1987.
Rehearing Denied April 9, 1987.
Sally Doerner of Walton, Lantaff, Schroeder and Carson, Miami, for appellants.
Jerold Feuer, Miami, for appellee.
Richard M. Davis, Gen. Counsel, Tallahassee, for amicus curiae/Associated Industries of Florida, Inc.
Steven A. Rissman and Robert A. Donahue of Cooper, Rissman and Weisberg, Orlando, for amicus curiae/Florida Ass'n of Self-Insurers.
PER CURIAM.
The employer and Florida Insurance Guaranty Association, Inc. (FIGA) appeal an attorney's fee award of 1.75 million dollars to the claimant's attorney where the present value of benefits secured by the services of the attorney amounted to 17.6 million dollars. The claimant cross-appeals that portion of the order allowing the carrier, at its option, to pay the attorney's fee in five installments, the first due upon the order becoming final, and the remainder payable in four equal annual payments, with interest at the legal rate. We affirm *498 on the appeal and reverse on the cross-appeal.
Appellants present a multitude of legal arguments in an attempt to demonstrate error in the deputy commissioner's fee award. They contend, among other things, that the deputy commissioner should have used the federal "lodestar" approach adopted by the Florida Supreme Court in Florida Patient's Compensation Fund v. Rowe, 472 So.2d 1145 (Fla. 1985). They also argue that "contingency" fees are inappropriate in workers' compensation cases, citing Southern Bell Telephone and Telegraph Company v. Rollins, 390 So.2d 93 (Fla. 1st DCA 1980). In addition, the E/C assert that the deputy commissioner erred in his finding that the "fee customarily charged" in the locality (section 440.34(1)(c), Florida Statutes) is the statutorily scheduled amount, and that it was error for the deputy to reject the appellants' contention that this component of the statutory formula must be reduced to an hourly rate. Finally, appellants argue, as do counsel for amici curiae, that the fee award in this case, the equivalent of $2,700.00 per hour of attorney's services, is patently excessive and unconscionable.
We dispose of appellants' argument for the application of the "lodestar" approach of Rowe by noting that this court has considered and rejected this contention in Rivers v. SCA Services of Florida, Inc., 488 So.2d 873 (Fla. 1st DCA 1986). The Fourth District has also found Rowe inapplicable in instances in which the Legislature has provided specific guidelines for determination of attorney's fee awards. Division of Administration, et al. v. Ruslan, Inc., et al., 497 So.2d 1348 (Fla. 4th DCA 1986) (award of attorney's fees in condemnation cases is governed by section 73.091-.092, Florida Statutes, rather than Rowe).
As for the appellants' assertion that contingent fees are inappropriate in workers' compensation cases, citing for this proposition the Rollins case, we observe first that Rollins dealt with a claim arising prior to the extensive 1979 statutory amendments under which the nature and purposes of the statutes governing claimant's attorney's fees underwent drastic revision. See, e.g., Florida Erection Services v. McDonald, 395 So.2d 203 (Fla. 1st DCA 1981); Crittenden Orange Blossom Fruit v. Stone, 492 So.2d 1106 (Fla. 1st DCA 1986) (en banc decision). Upon close examination, it will also be seen that the language of Lee Engineering & Construction Company v. Fellows, 209 So.2d 454 (Fla. 1968) (cited in Rollins, 390 So.2d at 95), which is critical of contingent fee awards in workers' compensation cases, primarily condemned the practice of arriving at a fee by the application of a contingent percentage to the total award, "in the absence of a stipulation or other evidence," (Lee Engineering at 458). Accord, Heavy Constructors, Inc. v. Dericho, 259 So.2d 489 (Fla. 1972) (use of Bar Association fee schedule, with no other evidence, disapproved); and Galarneau v. Caroly of Miami, 299 So.2d 579 (Fla. 1974) (same). In any event, the metamorphosis of the concept of claimant's attorney's fees from that of a cost of administering the workers' compensation law to be borne by the E/C, to the present system of claimantpaid attorney's fees except in limited instances, under the statutory contingent percentage formula, has been adequately explained in Okaloosa County Gas District v. Mandel, 394 So.2d 453 (Fla. 1st DCA 1981). As noted in Mandel, under the statute, the contingent percentage formula is the "starting point" for determination of a reasonable fee. Id. at 454.
We have carefully weighed and considered appellants' arguments attacking the fee award as excessive, as well as their challenge to specific aspects of the deputy's findings which, they assert, led to an erroneous result. To attempt to address each aspect of the excessiveness argument requires that we recite in detail the many unusual features of this case tending to justify the amount of the award. Rather than undertake this task, a formidable one in itself, we will allow the deputy commissioner's order, although lengthy, to speak for itself. The order states, in pertinent part:
"I carefully observed the manner and demeanor of those persons who testified *499 before the undersigned Deputy Commissioner. Those persons who testified by deposition, other than Mr. Mulry, are well known to the undersigned Deputy Commissioner as witnesses and, in the case of the trial lawyers involved, as advocates. Claimant's attorney witnesses include some of the most respected and skillful Workers' Compensation attorneys in South Florida. I especially observed the manner and demeanor of Dr. Fishe who appeared to give less than candid testimony and whose manner and demeanor impressed me unfavorably. Some of Dr. Fishe's answers seemed evasive and he seemed to be advocating too strongly the position of the Employer/Carrier for an impartial witness. Based not only upon this but also upon my knowledge of Mr. Shulenberger, I accept Mr. Shulenberger's testimony and opinions over those of Dr. Fishe.
"Also admitted into evidence was a packet of information including a statement of Jerold Feuer, his hours and some memos produced for the case. A sheet showing comparisons for the various elements found in Section 440.34, Florida Statutes involving both the Sitko case and the case of Florida Medical Center v. Von Stetina, the appellate decision of which is found at 436 So.2d 1002 [1022] (Fla. 4th DCA 1983) was provided with a memorandum of law. In support of the conclusions therein were various certified copies of excerpts of the Record on Appeal of that case before the Supreme Court of Florida which were entered into evidence. All written objections to the depositions and live testimony and to the various exhibits are overruled.
"The undersigned Deputy Commissioner having heard the testimony and reviewed all the documentary evidence presented, resolves all conflicts in the testimony and evidence and makes the following findings of fact and conclusions based thereon:
"1. The First District Court of Appeal in recent cases cited by Claimant's counsel, has ruled that the starting place for attorney's fees is the amount provided by calculation using the 25%/20%/15% statutory schedule amount. This necessitates a determination of the value of benefits. It was the position of the Employer/Carrier that the future benefits, which were the subject of the calculations both by Mr. Shulenberger and by Dr. Fishe, are speculative in nature. While there is unquestionably some element of speculation regarding any future damages, including permanent total disability benefits, the wording of the Statute requires awarding of a fee based on benefits `secured.' Case law, cited by Claimant's counsel, makes it clear that these future benefits are secured for the Claimant through the efforts of Claimant's counsel and that they must be considered in the determination of an attorney's fees [sic]. The Claimant is a quadriplegic and testimony indicates that this will be a condition existing for the rest of his life. It has already been found that the Claimant has a normal life expectancy and no testimony presented by the Employer/Carrier in these proceedings is of persuasive enough nature to overcome the testimony of the physicians whose opinions were accepted earlier. I therefore again find that the Claimant has a life expectancy of 34.5 years.
"2. I find that the benefits secured as a result of Mr. Feuer's efforts in this controverted case include future medical benefits with a present value of $16,907,497.00; past due temporary total disability benefits of approximately $6,800.00 plus interest; past due permanent total disability benefits of approximately $3,500.00 plus interest; future permanent total disability benefits and 5% permanent total disability supplement with a total present value of $278,017.00; future appliances and maintenance on those appliances of $296,435.00; past due medical benefits of $107,709.87 plus interest giving a total present value discounting at 8% of $17,600,000.00. The benefits secured must be looked at as if a lump sum of these amounts were to be paid. The value determined earlier in this paragraph as the present value of this case, 17.6 million dollars is at a discounted value of 8% taking inflation into account and is, indeed, the present value of the benefits secured through the efforts of Mr. Feuer.

* * * * * *
*500 "4. I find that the 25%/20%/15% numerical schedule gives a starting point attorney's fees of $2,640,000.00.
"5. Section 440.34, Florida Statutes, requires a Deputy Commissioner to consider numerous other criteria in a determination of whether the fee schedule initial amount should be raised or lowered. These various factors have been considered by the undersigned Deputy Commissioner in view of Mr. Feuer's testimony, which I accept, and the testimony of the various highly qualified experts who testified in this case. Due to the magnitude and importance to the Workers' Compensation system of the potential fee in this case, the undersigned Deputy Commissioner has perhaps given more consideration to these factors in this case than in any other case which has appeared in this Division.
"a) THE TIME AND LABOR REQUIRED: I find that 651.75 hours of productive time were expended in the prosecution of the subject claim. I find that Mr. Feuer is a highly experienced, efficient and knowledgeable attorney who, because of his background in chemistry, probably spent much less time than would have any other workers' compensation specialist who regularly appears before me in the South Florida area. I accept Mr. Druckman's opinion that probably twice the time would have been necessary for an experienced and efficient attorney, as is Mr. Druckman, to have prepared and tried this claim. Average counsel would have taken even more time. Certainly no other counsel representing claimants in South Florida has a scientific background of the quality or to the extent that Mr. Feuer possesses, having a Ph.D. in chemistry, experience as a physical chemist and as a research biochemist. While I consider the number of hours spent in the case to be important, in an instance where someone of Mr. Feuer's caliber and experience spent over 650 hours, I find that such a consideration has less importance than if this were a normal case without the scientific evidence which was presented, where someone like Mr. Feuer would not have had an advantage in both knowledge and efficiency as he had in this instance.
"b) NOVELTY AND DIFFICULTY OF QUESTIONS INVOLVED: This was undoubtedly the most novel, complex and difficult case to ever come before me as a Deputy Commissioner in over 10 years of experience. I find that this case was more difficult than even a difficult medical malpractice case and more complex, more novel and more difficult than was Von Stetina, not only due to the nature of the subject matter, but also the combination of subject matters including chemistry, biochemistry, medicine and physics. This case involved a situation where initial and conventional medical thought indicated that the Claimant would have been, at the time of the subject accident, in a state where his blood alcohol level was above the 0.1 percent threshold necessary to invoke a statutory presumption that the accident occurred primarily as a result of the corresponding intoxication. Furthermore, for Workers' Compensation cases, the use of automobile accident reconstruction experts, a physicist and biochemist or pharmacologist are unquestionably novel. The combination of those disciplines in one case, of any nature, Workers' Compensation or otherwise, is also unique and novel and contributes to the difficulty and complexity of the case. I find that Mr. Feuer's assessment of the case as initially less than a 30% chance of success is probably liberal and high. I find that this probability of success decreased when discovery revealed blood alcohol readings and the time sequence as it was determined to be, considering the fact that there is a statutory presumption which arises when a 0.1 percent blood alcohol level is determined to exist.
"c) SKILL REQUIRED TO PERFORM THE LEGAL SERVICE PROPERLY: I find that the skill required to perform the legal services provided to the Claimant in this case properly was extremely high and, indeed, required someone with the unique background and experience possessed by Mr. Feuer. I find, having heard Workers' Compensation cases for ten years, that the degree of skill required is far beyond that of the average Workers' Compensation specialist in this area. While other attorneys *501 might have attempted representing this Claimant, they would probably not have been able to be as thorough and probably not been as successful as was present Claimant's counsel.
"d) LIKELIHOOD THAT ACCEPTANCE OF THE PARTICULAR EMPLOYMENT WILL PRECLUDE EMPLOYMENT OF THE LAWYER BY OTHERS: I find that this is of limited importance in this case. Mr. Feuer surely turned down other cases during the pendency of this case but I do not consider that to be significant as that is true of any lawyer in a successful law practice.
"e) FEE CUSTOMARILY CHARGED IN LOCALITY FOR SIMILAR LEGAL SERVICES: The Fee Schedule as found in Section 44.34, Florida Statutes is the customary fee and, more often than not, fees awarded in Workers' Compensation cases are extremely close to this statutory schedule. While any award of fees is capable of being discussed in terms of an hourly rate, since hours are usually defined, and in terms of a percentage of the total value of the award, since these numbers required only a simple division, these numbers exist but are not the `customary fee.' The Employer/Carrier argued that this factor requires an hourly rate figure. Honorable Hughlan Long suggested $250, up from his usual $150 per hour, due to the skill of Claimant's counsel and the difficulty, novelty and complexity of the case. Knowing and having served with Judge Long, that is quite a compliment to Claimant's counsel. However, since fees of over $1,000.00 per hour in accordance with the sliding scale have been approved in multi-issue cases under much less aggravating circumstances than here, I cannot accept the Employer/Carrier's position. Appellate cases with only single issue litigation seem to be more in tune with the hourly rate theory than multi-issue, hotly contested cases such as this case. Cases in this division with fees of well over the Employer/Carrier's proposed rates, when in accordance with the schedule, have been affirmed.
"f) THE AMOUNT INVOLVED IN THE CONTROVERSY AND THE BENEFITS RESULTING TO THE CLAIMANT: This has been discussed previously. The amount in controversy was the amount awarded and the present value has been previously determined in this Order. I find this amount to be $17,600,000.00.
"g) THE TIME LIMITATION IMPOSED BY THE CLAIMANT OR THE CIRCUMSTANCES: This case presented one in which the Claimant was found to be and is brain damaged, quadriplegic, though with use of arms and some use of hands, and suicidal as a result of his compensable conditions. I find that there were time limitations placed upon Claimant's counsel by the circumstances and by Claimant's condition and, indeed, the undersigned Deputy Commissioner gave up vacation time, a weekend and an evening for the trial of this case as well as such other non-office time as was necessary to review the numerous depositions and other exhibits in this case. The statement of Defense counsel that Mr. Feuer created the time limitations is true only in the limited sense that he brought them to the Deputy Commissioner's attention. Had Mr. Feuer not acted as he did, he might have failed in his professional duty to the Claimant. This case was handled on virtually an emergency basis.
"h) THE NATURE AND LENGTH OF PROFESSIONAL RELATIONSHIP WITH THE CLAIMANT: I find this was a one time professional relationship.
"i) THE EXPERIENCE, REPUTATION AND ABILITY OF LAWYER OR LAWYERS PERFORMING THE SERVICES: I find that Mr. Feuer and Mr. Probst have excellent reputations in Workers' Compensation circles in this community. I find that Mr. Probst is a fine defense lawyer. While I have not accepted and do not accept some of the opinions that he expressed in his testimony before me, that still does not detract from the respect that I hold for him as an attorney and an advocate for the positions of his clients.
"Mr. Feuer's abilities are as previously discussed. He has built a reputation of taking the most difficult cases and handling them in an expeditious and successful manner. Undoubtedly, his background as *502 a scientist contributes significantly to these abilities and to his reputation. Mr. Feuer has been trying Workers' Compensation cases for approximately 9 years. Mr. Probst also had the benefit of having other lawyers in his firm even more experienced in Workers' Compensation practice and at least one of those attorneys has tried cases against Mr. Feuer in this Division. Ms. Leahy is an experienced and skillful lawyer who has tried numerous Workers' Compensation issues in the past. She is a methodical, bright and hard working attorney who is extremely proficient in dealing with details in a case. Sharlene Kosto has appeared on numerous occasions before the undersigned Deputy Commissioner and has a good reputation in dealing with Workers' Compensation cases. She is house counsel for the Carrier in this case. While Mr. Bonner and another young associate with Mr. Probst's firm were not lead counsel, nor did they participate in the actual courtroom questioning of witnesses in this case, they undoubtedly contributed whatever thoughts that they had. Many notes were passed between defense counsel during the trial. The old adage `two heads are better than one' is undoubtedly true in a complex litigation situation and 4 or 5 heads, in this case, were certainly better than 1 or 2. Each individual brings with him or her that individual's unique qualities and perspectives which are valuable in formulating a defense strategy and in reviewing and preparing the voluminous material which was placed into evidence before the undersigned Deputy Commissioner. The fact that so many legally trained individuals were involved on the side of the Employer/Carrier can only serve to increase the difficulty to the sole practitioner Claimant's counsel in a case which was already extremely difficult.
"j) THE CONTINGENCY OR CERTAINTY OF THE FEE: This was a contingent case. It was virtually an all or nothing case with a real probability that no benefits would have been awarded. I seriously doubt that any other attorney in South Florida would have devised the type of rebuttal to the intoxication defense involving shock, chemical analysis, hypovolemia and loss of body temperature as did Mr. Feuer. I also feel that his knowledge of physics was also instrumental in avoiding the consequences of Mr. Meyersohn's opinions which also dealt with attempting to invoke the intoxication defense.
"6. Former Deputy Commissioner Hughlan Long testified strictly to an hourly rate regarding attorney's fees in this case. I find that that testimony cannot be considered competent and substantial evidence upon which to base a fee in this case. In fact, none of the defense experts considered the schedule amount as a starting place. Some of their opinions were based on incorrect premises involving time required, the amount of benefits secured and/or difficulty, novelty and complexity standards to be applied. One position of the Employer/Carrier in this case was that this particular case was so exceptional in the size of the present value of the award so as to remove it from the purview of the 440.34 schedule. I reject that argument. The legislature had to be aware of the potential for the existence of cases such as this. Paraplegic and quadriplegic injuries have occurred throughout the history of Florida's Workers' Compensation. In fact, the Employer/Carrier brought such a case to the attention of this Deputy Commissioner. However, to my knowledge, this is the first such case which was prepared and tried as thoroughly and the damages explored as thoroughly as have been done here. I accept Mr. Nachwalter's opinion that this was the most thoroughly prepared case that he has seen in over 20 years of practice and certainly the best prepared and tried claimant's case in any area of law that I have seen in my 10 years on the bench and time in practice before that. It was also the most difficult, complex and novel case that I have seen in that period of time. The standard for determination of the various factors contained in Section 440.34(1)(a) through (h) is not based on the particular lawyer involved, other than that factor dealing with experience, ability and reputation of the lawyer involved, but is based on the average attorney practicing in the State of Florida and the average Workers' *503 Compensation case for which a standardized fee was desired.
"7. The District Court of Appeal, in a recent decision, indicated that a Deputy Commissioner should consider whether the Employer/Carrier avoided the necessity of some of the litigation by stipulations or other conciliatory actions. The stipulation that depositions were admissible did save trial time while increasing non-trial time, but certainly helped speed up the schedule from accident to Order. I find that in this case if there were any other such activities, they were diminimous [sic] and, indeed, this case litigated probably more issues than any other case that I can remember at this point.
"8. As previously stated, there have been presented before me certain certified copies of the Record on Appeal before the Florida Supreme Court in the case of Florida Medical Center v. Von Stetina. In that case the Fourth District Court of Appeal determined that a $1.5 million dollar fee was reasonable and appropriate in the situation where $12.47 million dollars was awarded by a jury in a medical malpractice case. I find that that case was less complicated, less novel and less difficult than the present case. I also take into account that that case involved a jury trial. I find that that case also had excellent counsel who was experienced. I find that that case was also contingent and required a high degree of skill and medical knowledge in order to succeed, though not as high a level of technical and unusual knowledge as did the present case. I further find that in Von Stetina no time records were kept, no estimate of the number of hours spent exists in either the trial judge's order or the appellate order and that while that counsel determined that he spent the better part of a year on that case, during that period of time he tried numerous other complicated cases all of which required preparation and that that counsel has continued to try the same type of cases which also required preparation during that year period when Von Stetina was being prepared. The hours in both cases are probably comparable. That trial judge and that District Court also determined that the number of hours involved was not an important element in the determination of a fee. Certainly when one is involved with a complex, novel and unique litigation requiring over some threshold number of hours, much less than 650, the number of hours becomes somewhat less relevant and less important. That is the case here. Furthermore, experienced and efficient counsel such as represented Claimant and Plaintiffs in both cases should not be penalized for their experience and efficiency by the `hourly rate' theory of attorney's fees.
"9. I find that Von Stetina, while it is relevant and material, is not controlling here as Workers' Compensation attorney's fees start with a statutory fee schedule set by the legislature to standardize fees. That schedule is presumed correct until one or a combination of the eight factors and sets of factors in Section 440.34 shows that that figure should be raised or lowered. Von Stetina was a case determined without such a statutory schedule but simply on a quantum merit or `reasonable fee' type of analysis similar to that type of analysis used in `pre-schedule' years in Workers' Compensation as demonstrated by Lee Engineering & Construction Company v. Fellows, 109 209 So.2d 454 (Fla. 1968). Were I determining the fee in this case based upon Lee Engineering not based upon the fee schedule, I would certainly find that Claimant's counsel is entitled to a fee somewhat higher than the Von Stetina 1.5 million dollar fee.
"10. I find that the statutory schedule fee of 2.64 million dollars corresponds to an hourly rate of over $4,000.00 per hour. This factor is mitigated not only by the testimony, which I accept, that the hours expended are small compared to the time required to be expended by the average Workers' Compensation specialist, let alone the average nonspecialist attorney who also handles Workers' Compensation cases, but by the consideration that Mr. Feuer is highly efficient. The research time spent was, I find, necessary. Certainly Dr. Feuer has superior knowledge but with that superior knowledge comes increased professional responsibility to dig deeper *504 and be better prepared to cross examine and, in effect, teach a court the facts necessary for understanding and resolution of the scientific and medical facts in dispute. While it is undoubtedly true, as defense counsel argues, that Claimant's counsel increased his own knowledge as a result of that research, that is or should be true as a result of the handling of any novel and/or complex case by any lawyer.
"11. I find that each of the findings in this Order relating to the amount of the fee, other than the hourly rate consideration, are either neutral or tend to raise the fee above the schedule. A neutral factor is one which neither tends to raise or lower the fee from the schedule amount. A positive finding tends to add to the fee above the level of the schedule's starting place value and a negative finding tends to lower the fee from the schedule amount. Considering the standard to be that of the average competent attorney, the time and labor required, the novelty and difficulty of the questions involved and the skill requisite to perform the legal services properly, except for the hourly rate involvement, tend to be positive factors and tend to raise the fee above the statutory schedule. I find that the factor involving the time limitations imposed by the Claimant or the circumstances tends to raise the fee above the statutory schedule amount. This case was, as Judge Smith stated, tried on a virtual emergency basis. I find that the factors involving experience, reputation and ability of the lawyer or lawyers performing the service and the contingency of this case also are positive factors. I find that the factor involving the fee customarily charged, if considered to be on an hourly basis as suggested by the defense, tends to lower the fee, though if one considers the schedule to be the fee customarily charged, then this is a neutral element. I find that the factor involving the amount in controversy and the fact that the benefits resulting to the Claimant are the same tends to raise the fee above the statutory schedulor, at worst, is a neutral element. I find that the consideration found in Section 440.34(b) is a neutral element. I therefore find that other than consideration of the hourly rate, the fee should be at or above the statutory schedule.
"12. First District Court decisions show that to judge the excessiveness of an attorney's fee award or to award one solely on the basis of its per hour rate is not proper and ignores the sliding scale provisions of Section 440.34 as well as legislative intent. Certainly there are limits on the `hourly fee' amount. I find, therefore, that a reasonable fee in this case is 2.64 million dollars ($2,640,000.00). If there was ever a large award Workers' Compensation case where a fee equal to or greater than the schedule was earned, it is this case. Considering the customary fee in the light most favorable to the Employer/Carrier's position but considering the more realistic figures, however, I am reducing it to 1.75 million dollars only as a result of consideration of the over $4,000 hourly rate. Were I to accept Dr. Fishe's opinions from tables 7, 8 and 10 of his exhibit, giving a total present benefit value of $11.71 million, the fee would be the same. There the hourly rate factor would be the same as the present result and the other factors of 440.34(1) (a-h) would be comparable except for the amount in controversy."[1]
The depth of consideration given to the statutory factors by the deputy commissioner is apparent from the portions of his order above reproduced. It is obvious that the deputy commissioner fully considered the "hourly rate" component of the fee equation and found that it was so outweighed by other factors as to be of little significance in determining a reasonable fee under the extraordinary circumstances of this case.
In the final analysis, the fee award seems shocking because of its unusual size. No less shocking to this court is the magnitude of the medical and other costs which *505 combine to create a staggering award of workers compensation benefits, even when reduced to present value. As we view most of the appellants' arguments concerning excessiveness of the attorney's fee, they do not tend to demonstrate that a fee of 10% of the total benefits award is too much for the E/C to have to pay as a consequence of failing to prevail in their efforts to withhold these benefits, but rather, that the amount of the fee is simply too much for the claimant's attorney to receive. While appellants assert that the legislature never "intended" a fee award in this amount to a claimant's attorney, we think this case well demonstrates the wisdom of a statutory construction allowing such a fee. Although large, the fee award is not likely to cause any E/C to voluntarily accept total liability for multi-million dollar claims simply to avoid assessment of such fees. In comparable cases, which we hope will be rare, the prospect of what amounts to a 10% surcharge, well within the statutory range, is not likely to influence the E/C's decision to controvert or accept liability, one way or the other, without regard for the merits of the case. On the other hand, reduction of the fee down to the level advocated here by the E/C and amici curiae would be likely to offer considerable encouragement to deny benefits, even in the most meritorious of claimants' cases. If the E/C are allowed to weigh the possible benefit of successfully defending a 17 million dollar claim (no matter how remote the chance of success) against the risk of an additional expense of some $200,000 in claimant's attorney's fees (the E/C's experts felt an appropriate fee would be $130,000-$200,000), common sense tells us that voluntary acceptance of mega-dollar claims would be virtually unthinkable. The result would be the transformation of the workers compensation claims process from a self-executing system providing a litigational procedure for the resolution of questionable claims, to a totally adversary costbenefit approach to the entire industrial claims reparation system. Perhaps this would be a preferable kind of system. It is not, however, the system adopted by the Florida Legislature.
Turning to a second issue, appellant Florida Insurance Guaranty Association, Inc. urges that section 631.57(1), Florida Statutes (1984), limits its liability for claims other than those of injured workers to $300,000. At least two decisions, as appellants recognize, have held that an award of attorney's fees constitutes a "covered claim" within the meaning of the statute. Florida Insurance Guaranty Association v. Gustinger, 390 So.2d 420 (Fla. 3d DCA 1980); Zinke-Smith, Inc. v. Florida Insurance Guaranty Association, Inc., 304 So.2d 507 (Fla. 4th DCA 1974), cert. den., 315 So.2d 469 (Fla. 1975). We find the statutory language unambiguous, and the statutory cap of $300,000 is not applicable to "any covered claim arising out of a workers' compensation policy." § 631.57(1), F.S.
Appellants also contend that the five percent (5%) supplemental benefits provided in section 440.15(1)(e) is not to be included in the computation of benefits secured by a claimant's counsel where the claimant already is eligible for the maximum weekly compensation rate. This point was resolved adversely to the E/C after the filing of their brief by the substituted opinion on rehearing in Polote Corporation v. Meredith, 482 So.2d 515 (Fla. 1st DCA 1986).
The claimant cross-appeals the deputy commissioner's order allowing payment of the attorney's fees in installments, citing Matera v. Gautier, 133 So.2d 732 (Fla. 1961), City of Leesburg v. Padgett, 397 So.2d 732 (Fla. 1st DCA 1981), and M. Serra Corporation v. Garcia, 426 So.2d 1118 (Fla. 1st DCA 1983). While we agree with cross-appellees that these cases are distinguishable in that in none of them did the deputy commissioner determine and order payment of a fixed amount of attorney's fees, we nevertheless find the deputy commissioner's order allowing annual installment payments of fees unauthorized, and an abuse of discretion. To subject the claimant's attorney to the uncertainties and contingencies inherent in an extended payment plan would have a substantial impact *506 on his or her willingness to undertake complex cases such as the one before us. As cross-appellant points out, for example, while here the order for fees provides for interest on the deferred installments, whether or not this provision is enforceable against FIGA is brought into question by section 631.57(1), Florida Statutes, which provides in part: "In no event shall the association be liable for any penalties or interest." Thus, the prospect for future litigation on this account, and from other circumstances that might be easily imagined, tends to erode the value of the attorney's earned entitlement to compensation and makes it less desirable to undertake representation in cases such as this.
We therefore affirm the award of fees, reverse the order allowing payment in installments, modify the order by striking the provision for installment payments, and order the immediate payment of the fees due to claimant's attorney.
AFFIRMED in part and REVERSED in part.
SMITH, JOANOS and WIGGINTON, JJ., concur.
NOTES
[1] As pointed out by amicus curiae, Associated Industries of Florida, Inc., Von Stetina was subsequently reversed with instructions to follow the Rowe criteria. Von Stetina v. Florida Medical Center, 436 So.2d 1022 (Fla. 4th DCA 1983), reversed, Florida Patient's Compensation Fund v. Von Stetina, 474 So.2d 783 (Fla. 1985).