ZEHMER, Judge.
The sole issue raised on appeal by the employer/carrier is that the deputy commissioner erred by awarding claimant an attorney’s fee under section 440.34(3)(b) and (c), Florida Statutes (1983). We affirm.
The deputy commissioner’s order provides:
1. The Deputy Commissioner has jurisdiction of the parties and the subject matter hereto.
2. The issue is limited to entitlement to attorney’s fees payable by the employer/carrier pursuant to Florida Statutes 440.34(3)(b) and (c).
3. The claimant contends that the employer/carrier is obligated for attorney’s fees as a result of benefits obtained pursuant to the Amended Order dated November 21, 1984 under the “bad faith” and/or “controversion” provisions of Florida Statutes 440.34. The employer/carrier defended arguing that if the claimant’s attorney is entitled to a fee it should be paid by the claimant and not the employer/carrier, since there was no conversion, and no bad faith.
4. In addition to the live testimony and documentary evidence which was introduced at the previous hearing leading up to the Amended Order of November 21, 1984, the claimant placed into evidence the Claim for Benefits, Application for Hearing, Workers’ Compensation Specialist’s Report of September 28, 1982, BCL-4 dated May 25, 1982, and Notice to Controvert dated September 21, 1982.
5. While I have not detailed a resume of the testimony of all of the witnesses, I have considered all of the testimony of all of the witnesses, all of the documentary evidence and deposition placed into evidence, resolved any conflicts therein, and made the following findings of ultimate fact:
I find the employer/carrier shall pay the claimant’s attorney a reasonable attorney’s fee on the basis of benefits obtained pursuant to the Amended Order of November 21, 1984 on the basis of both Florida Statutes 440.34(3)(b) and Florida Statutes 440.-84(3X0.
I find that the employer/carrier in fact controverted the claim in its entirety for the following reasons: the claimant was paid compensation and medical benefits from the date of her accident until May 25, 1982 when the carrier filed their BCL-4 dated May 25, 1982 suspending compensation benefits on grounds that “injury not work related.” Immediately following the filing of this form, both compensation and medical benefits were suspended. In fact, the claimant was obligated to pay for medi *104 cal treatment with the previously authorized doctors, out of her own pocket. The claimant retained an attorney and a formal claim was filed on July 30, 1982 requesting compensation and medical benefits, and pointing out that while all benefits were suspended a formal notice to controvert had not yet been filed. The carrier then filed a formal notice to controvert on September 21, 1982 stating, “present condition not related to work/comp injury.”
In a deposition of the claim’s adjuster, Jo Ann De Luna, the claimant’s attorney established through her testimony that the claim, in its entirety, was in fact controverted.
[p. 4] Q. After that examination, I guess a BCL or WCC-4 was eventually filled out controverting further benefits; is that correct?
A. Yes.
[p. 6] Q. Up until this point, the claimant had been receiving compensation?
A. Yes, sir.
Q. And authorized medical treatment?
A. Yes, sir.
Q. After that everything was suspended?
A. Yes.
[p. 10] Q. Before I go on further, is it fair to say on the strength of a bill which indicates diagnosis deferred and then makes a short statement, that all compensation benefits were controverted subsequent to May 25, 1982 from a doctor that examined her for a sinus problem in and of itself?
Mr. Kronenberg: I object to the form. When you say controverted, you mean suspended or compensatory?
Mr. Suskin: I mean the whole gamut.
Mr. Kronenberg: Benefits were suspended.
Mr. Suskin: The entire case was controverted, wasn’t it?
A. I know we suspended the benefits at that point. Let me check.
Q. Check around September 21, 1982.
A. Yes, it was.
Q. Back to the question: on the strength of Dr. Villalonga’s bill, all compensation benefits were controverted; is that a fair statement?
A. Yes, sir.
[p. 14] Q. Then you came out with the BCL-4 dated May 25,1982, which indicated injury not work related; is that correct?
A. That’s correct.
Ms. De Luna, at one point, stated that, “what was controverted was her present condition, which was the ear condition.” The claimant’s attorney, Mr. Suskin, then asked her to point out where there was a specific mention that the ear condition alone was controverted, leaving the other conditions intact and compensable. It was not answered. Mr. Suskin then directed the witness to the claims evaluation report from the Workers’ Compensation Specialist, Timothy Christie, dated September 28, 1982 which stated, CARRIER: “Jo Ann Deluna, adjuster, stated that the compensa-bility of the claim is at issue at this time. The compensability of the claim was not at issue before May 25, 1982. Ms. Deluna explained that the carrier was controverting any further benefits associated with the claim because it is the carrier’s contention that the injury and present condition are not work related.”
At the final hearing, counsel for the employer/carrier objected to the Division’s Claim Evaluation being admitted into evidence on the basis of hearsay. On the strength of the holding of Burnup & Sims, Inc. v. Ozment, 440 So.2d 29 (1 DCA, 1983), I find that the statement given to the Workers’ Compensation Specialist was an admission on the part of the carrier of their intent at the time when benefits were suspended. While information contained in reports from Workers’ Compensation Specialist contained hearsay information, their reports are a necessary adjunct to the commission file and the information may, under the proper circumstances, be acceptable evidence. Due to the fact that the Specialist’s report was placed into controversy *105 during the deposition of Ms. De Luna, without objection on the part of the carrier’s counsel, and without objection at the time the deposition was placed into evidence, and because there was no effort made on the part of the carrier to refute the statements made by Mr. Christie attributable to the carrier, I feel the report of the Workers’ Compensation Specialist constituted reliable evidence. Furthermore, under the basis principles of administrative law, hearsay evidence is admissible at the discretion of the finder of fact and is considered as competent and substantial so long as it does not stand alone and is supported by other competent substantial evidence on the disputed issue.
In the deposition of Ms. De Luna, Mr. Suskin asked,
[p. 12] Q. Do you have a copy of the claim evaluation report from Timothy Christie, dated September 28, 1982?
A. Yes.
Q. Do you have that in front of you?
A. Yes, I do.
Q. Would you look on the first page where it says that the compensability of the claim is at issue at this time?
A. The compensability of the claim was not at issue before May 25, 1982.
Q. Do you disagree with that statement?
A. I can’t disagree. I can’t remember that far back.
I further find that the self-serving statements of the adjuster, after the fact, denying compensability of the entire claim, is inconsistent with the actions of the carrier. Up until May 25, 1982, compensation and medical benefits were being provided. The claimant was receiving orthopedic and cardiac treatment. If in fact the carrier were controverting only an ear condition, leaving all other medical treatment authorized, then why were all medical benefits suspended? Moreover, Ms. De Luna acknowledged that at the time of the suspension of benefits, the claimant was under the care of Dr. Gilmore, who felt the claimant was unable to work, and yet compensation benefits were suspended on the basis of a statement contained in a medical bill from an ear, nose and throat physician.
6. It was argued by counsel for the carrier that benefits were only suspended for six months and then resumed. However, there was no evidence nor explanation as to why benefits were resumed. Consequently, in view of the unrefuted documentary evidence, and the statements of the claims adjuster, in addition to the conduct of the carrier, I find the carrier controverted the claim in its entirety on May 25,1982, making it necessary as opposed to expedient for the claimant to obtain the services of an attorney, and entitling the claimant’s attorney a reasonable attorney’s fee pursuant to Florida Statutes 440.-34(3)(c) for benefits arising from the Amended Order of November 21, 1984.
7. In the alternative, I further find the employer/carrier acted in bad faith entitling the claimant’s attorney to a reasonable attorney’s fee pursuant to Florida Statutes 440.34(3)(b) for benefits arising from the Amended Order of November 21, 1984. I make this finding for the following reasons: prior to the suspension of benefits on May 25, 1982, the claimant was receiving authorized treatment for injuries related to her head, neck, mid and upper back, heart, and psychological state. Her cardiologist, Dr. Gilmore, thought the claimant was unable to work, which is acknowledged by Ms. De Luna. However, after being examined by a Dr. Pedro Villalonga, ear, nose and throat specialist, all benefits are suspended. Dr. Villalonga was provided with no medical reports from the other treating physicians, and no information concerning her industrial accident. Instead of submitting a narrative report, Dr. Villal-onga sent a bill, with a sketchy remark, stating that the diagnosis was deferred, but that after physical examination, patient’s complaints were not work related. No other details were given.
Ms. De Luna admitted that Dr. Villalon-ga was not contacted concerning this report, nor did she contact any of the other *106 authorized physicians treating the claimant for the other compensable conditions. Further, in spite of her knowledge that the cardiologist had the claimant in an [sic] out of work status, all benefits were suspended.
In Dr. Villalonga’s deposition, it was learned that he examined the patient on one occasion for the insurance company. He in fact did not check her ear, but was concerned with a sinus problem. He took no history concerning any industrial accident, and even acknowledged that the bill containing the language that any conditions that he examined were not work related, was prepared by his secretary, not by him, and was not signed by him. He did not examine her for any of her other conditions related to the industrial injury and contacted no other physicians. Moreover, he conceded that he would reserve ruling on causal connection between her sinus and ear condition and the industrial accident until after he had a better history.
After reading the depositions of Drs. Vil-lalonga and the claims adjuster, Ms. De Luna, it is clear that the carrier acted with a negligent disregard for the claimant. There was no attempt to check out the statements of this examining doctor for veracity; to compare those statements with the authorized ear, nose and throat physician, nor the other physicians treating her for other conditions. It appears that the carrier was only interested in obtaining some information, any information, which would justify a suspension of benefits, whether or not this information was valid or reliable.
8. It is incumbent upon the employer/carrier to act in good faith and in the best interest of a claimant. The employer/carrier cannot erect a “wall of ignorance” and insulate themselves from knowledge of a claimant’s condition nor abdicate their investigation responsibility by inaction. The employer/carrier must not look for excuses to suspend benefits, but must make a timely and reasonable investigation before depriving a claimant of legally entitled benefits. The instant case represents an example of how the neglect of the carrier threatens significant harm to a claimant, making it necessary for the claimant to retain the services of an attorney, and therefore entitling the attorney to a reasonable fee under Florida Statutes 440.34(3)(b).
Section 440.34 states in relevant part:
(3) If the claimant should prevail in any proceeding before a deputy commissioner or court, there shall be taxed against the employer the reasonable costs of such proceedings, not to include the attorney’s fees of the claimant. A claimant shall be responsible for the payment of his own attorney’s fees, except that a claimant shall be entitled to recover a reasonable attorney’s fee from a carrier or employer:
* * * * * #
(b) In cases in which the deputy commissioner issues an order finding that a carrier has acted in bad faith with regard to handling an injured worker’s claim and the injured worker has suffered economic loss. For the purposes of this paragraph, the term “bad faith” which amounts to fraud; malice; oppression; or willful, wanton, or reckless disregard of the rights of the claimant. Any determination of bad faith shall be made by the deputy commissioner through a separate factfinding proceeding. The deputy commissioner shall issue a separate order which shall expressly state the specific findings of fact upon which the determination of bad faith is based; or
(c) In a proceeding in which a carrier or employer denies that an injury occurred for which compensation benefits are payable, and the claimant prevails on the issue of compensability.
In the situations set forth in paragraph (b), the payment of such attorney’s fees may not be recouped, directly or indirectly, by any carrier in the rate base, the premium, or any rate filing.
Appellants have not contended that the record lacks competent, substantial evidence to support the deputy commis *107 sioner’s finding; they argue only that the use of the disjunctive “or” between subpar-agraphs (b) and (c) of section 440.34(3) makes these two grounds mutually exclusive and thus precludes the deputy commissioner from awarding a fee based upon alternative findings of wrongful controversion and bad faith. They cite no authority for this proposition, and we find no merit to it. An employer or carrier can be guilty of bad faith even if they also wrongfully controvert compensability. The additional finding of bad faith means that the payment of such attorney’s fees may not be recouped directly or indirectly by a carrier in the rate base, the premium, or any rate filing. Sec. 440.34(3)(c), Fla.Stat. (1983).
AFFIRMED.
THOMPSON and BARFIELD, JJ., concur.