559 So.2d 587 (1989)
FUMIGATION DEPARTMENT and Claims Center, Appellants/Cross-Appellees,
v.
Wade PEARSON, Appellee/Cross-Appellant.
No. 88-3070.
District Court of Appeal of Florida, First District.
September 6, 1989.
On Rehearing Denied April 27, 1990.
H. George Kagan, of Miller, Hodges, Kagan & Chait, Deerfield Beach, for appellants/cross-appellees.
Jerold Feuer, Miami, for appellee/cross-appellant.
WENTWORTH, Judge.
Claimant seeks review of a November 15, 1988 workers' compensation order awarding him an attorney's fee of $330,000. Claimant seeks review of the amount of the fee award and also the deputy's refusal to rule on the issue of bad faith. We affirm.
An order on the merits of claimant's case was entered by the deputy on April 8, 1988. An appeal was taken to this court, and this court affirmed the deputy's order on the merits on August 15, 1989. Fumigation Department v. Pearson, 547 So.2d 352 (Fla. 1st DCA 1989). Claimant was found to be permanently totally disabled due to exposure to toxic substances, and was awarded, among other things, lifetime attendant care. Claimant's recovery, reduced *588 to present value, was ultimately determined to be over five million dollars.
Claimant's attorney attempted to introduce evidence before the deputy on the issue of bad faith. The attorney for employer (self-insured) resisted this, noting that the employer acknowledged claimant's entitlement to an attorney's fee and contending that the issue of bad faith was therefore moot. In the order before us the deputy did not address the issue of bad faith. The deputy made several findings as to the scope of claimant's recovery. He found that claimant would require future psychiatric care at a rate set out in the merits order, and thus included this award of future psychiatric care in the benefits recovered by claimant. With respect to the issue of claimant's award of attendant care, the deputy found the market value of this care was to be measured by the cost to the employer of obtaining such attendant care in the market place. The deputy found that a reasonable average sum to be paid for this attendant care would be $11.25 an hour. With respect to the discount rate to be applied to the whole of claimant's award, he found that the 8% statutory discount rate applicable to an award of compensation was to be applied here also, and that the attendant care was to be classified as "services by other medical professionals," and therefore assigned an inflationary index to the cost over the next 47 years of 7.53% annually. The sum total of this recovery, after being reduced to present value, was $5,085,362.00. The order finds:
11. Having determined the recovery (both past and anticipated future), the undersigned must now address the issue of the fee to be awarded claimant's attorneys for prosecuting the merits claim. The undersigned has considered the factors set forth in the landmark decision of the Supreme Court in Lee Engineering as well as the schedule provided in Chapter 440.34, Florida Statutes... . I now review each of the individual factors and use them in determining what, in my opinion, constitutes a reasonable fee.
A. TIME AND LABOR INVOLVED: Attorney Feuer testified he spent 292.75 hours in this case and attorney Druckman testified he spent 100 hours. The diligence of both attorneys is praiseworthy but it appears to the undersigned that, given Mr. Feuer's vast experience in the toxic tort area, his background in chemistry, and his familiarity and past association with witnesses he utilized, the amount of time actually spent seems to be greater than was necessary... . [T]he actual time and labor spent by the attorneys should be weighed in the context of the dynamics of the entire claim. I infer, therefore, that less hours were required (in order to successfully prosecute the subject claim) than was actually spent. For example, there does not appear to have been a necessity for Mr. Feuer, considering the totality of circumstances, to expend 86 hours in medical research alone during the pendency of the claim. This is especially apparent when one considers what is scientifically known about the character and quality of the chemicals involved in the claim.
B. THE NOVELTY AND DIFFICULTY OF THE QUESTIONS INVOLVED: This claim dealt with an employee, in the pesticide industry ... injuriously exposed to one of the pesticides he handled. The chemicals to which claimant was exposed were known to the parties and their toxic effects well established in the literature (compare Chapter 38 F-41, F.S.)... . The parties seem to have spent more time than is generally spent in producing their evidence but this fact should not be construed as a sign the instant claim was any more exotic or unique than other exposure claims. These claims seem to generate more litigation hours than the typical "back" or "wage loss" claims and may explain why we see higher fees awarded in such cases... .
C. THE SKILL REQUISITE TO PERFORM THE LEGAL SERVICES: I find that the attorneys, who have appeared on behalf of the employee, are skilled workers' compensation practitioners. Either of them and particularly attorney Feuer could have and did provide the claimant with excellent representation. My *589 knowledge of the issues and the manner in which these cases need to be tried does not lead me to the view that only an attorney, with a degree in chemistry, could have prosecuted the claim. But it did require the skills of a competent workers' compensation practitioner.
D. LIKELIHOOD THAT ACCEPTANCE OF A PARTICULAR EMPLOYMENT PRECLUDED EMPLOYMENT BY OTHERS: I find this factor to be of limited importance. If anything, given Mr. Feuer's success in the field of chemical exposure claims, his reputation is such that successful prosecution of this claim will probably lead to more referrals... . Neither attorney testified that employment, in this particular claim, precluded employment by any other respective clients. The fee should not be increased because of this factor.
E. FEE CUSTOMARILY CHARGED IN LOCAL[ITY] FOR SIMILAR LEGAL SERVICES: ... In the experience of this Deputy Commissioner, there is no `customary hourly rate' charged by attorneys who represent claimants in Workers' Compensation cases... . Florida Bar publications describe a spectrum of hourly fees in this community as ranging anywhere from $85.00 an hour to $250.00 per hour... . The undersigned feels a rate of $150.00 per hour should reasonably compensate a workers' compensation attorney for his time if only time was to be considered. However, the hourly rate is only one factor to be considered and attorneys should not be restricted to such a rate if other variables point to the assessment of a fee which nets more per hour.
F. THE AMOUNT INVOLVED IN THE CONTROVERSY AND THE BENEFITS RECOVERED: ... [T]he bulk of the `recovery' constitutes an attempt by the witnesses to project what may transpire, medically, over the next 47 years both as to need and costs. It is speculative, to say the least... . The recovery figure should not be given undo [sic] weight... .
G. THE TIME LIMITATION IMPOSED BY THE CLAIMANT OR THE CIRCUMSTANCES OF THE CLAIM: No evidence was presented during the pendency of this claim suggesting that claimant's attorneys were unable to handle other matters... .
H. THE NATURE AND LENGTH OF THE PROFESSIONAL RELATIONSHIP: Representing the claimant in this case was a one time professional relationship. This factor does not appear to weigh one way or the other... .
I. THE EXPERIENCE, REPUTATION, AND ABILITIES OF THE ATTORNEYS PERFORMING THE SERVICES: I find that claimant's counsel have excellent and well deserved reputations... . [T]heir compensation should be more per hour than what may normally be charged to the public.
J. THE CONTINGENCY OF CERTAINTY OF THE FEE: This was [a] contingent case. Claimant's attorneys had no provision for the payment of the fee by the employee in the event of a loss. If the suggested guidelines in [Florida Patient's Compensation Fund v.] Rowe [472 So.2d 1145 (Fla. 1985)] were applicable to the assessment of a fee for prosecuting a claim at the Deputy's level, the undersigned would find the contingency factor to be a `2'. While it wasn't a `sure win,' the scientifically established association between the methyl bromide and brain damage created a better than even chance of successfully prosecuting their particular claim. But, as stated by the First DCA in [What an Idea, Inc. v.] Sitko [505 So.2d 497 (Fla. 1st DCA 1987)], Rowe is not applicable because we have the guideline fee schedule in Section 440.34, F.S.
The undersigned Deputy Commissioner has been aided in his determination of a reasonable fee by expert testimony from the attorneys of record and Workers' Compensation practitioners who are well known to the undersigned as experts in the field of workers' compensation. The `bottom line' figure for a reasonable fee ... ranged from a low of $12,500.00 to a high of $1,000,000.00... . [E]ach expert has emphasized variables which, to this *590 fact finder, should not have been emphasized as much as they were... .
The undersigned, exercising my own independent judgment, and weighing the variables, feels a reasonable fee for successfully prosecuting this claim (for both claimant's attorneys) is the sum of $330,000.00. This sum represents substantially more than is customarily awarded in workers' compensation matters. It equals compensation in excess of $840.00 per hour and to this fact finder, a `bottom line' fee of $330,000.00, is appropriate considering all the circumstances of the claim... . The undersigned recognizes the fee is less than the 25/20/15 schedule would call for. However, for the reasons set forth above, the amount of $330,000.00 is a reasonable fee.
The opinion in Sonesta Beach Hotel v. Hinckley, 483 So.2d 102 (Fla. 1st DCA 1986), indicates that alternative findings of entitlement to an attorney's fee based upon both wrongful controversion and bad faith handling of the claim were necessary when properly substantiated because different legal results could flow from the alternative findings. This court recently found that a bad faith finding was equally pertinent in a sequential proceeding. Prestressed Decking Corp. v. Medrano, 545 So.2d 403 (Fla. 1st DCA 1989). As noted in Prestressed Decking, "even though entitlement to a fee was already established ... the deputy was entitled to conduct the subsequent bad faith proceeding." Id. at 404.
In the present case, however, the fee is awarded against "employer, by and through its authorized servicing agent," indicating that the basis upon which the fee is awarded may have no potential for collateral consequences. On that basis we distinguish the cited decisions and decline to compel a determination of the bad faith issue by the deputy.
For purposes of determining an attorney's fee award under section 440.34(1), Florida Statutes, a starting point in the analysis is the amount of benefits obtained for the claimant by his attorney. Prestressed Decking, supra, at 405. Section 440.34 embodies a legislative intent to standardize the method for assessing fees absent special circumstances, and when a deputy departs from the statutory schedule, his order should reflect that he considered all of the relevant, prescribed factors to the extent that circumstances permit. Fiesta Fashions, Inc. v. Capin, 450 So.2d 1128, 1129 (Fla. 1st DCA 1984). Although the amount of benefits obtained for the claimant is a starting point and a significant factor in the analysis, it is not determinative of the amount that can be awarded. Martin Marietta Corp. v. Glumb, 523 So.2d 1190, 1195 (Fla. 1st DCA 1988). An attorney's fee award will not be set aside merely because it varies from the statutory rate, when the deputy commissioner's order reflects an appropriate consideration of the statutory factors. Id.
In this case, the order contains very specific findings as to each of the criteria enumerated in section 440.34(1). The deputy is vested with considerable discretion in his analysis of the statutory criteria and his conclusion as to what constitutes a reasonable fee. We find no abuse of discretion is demonstrated here and therefore affirm the award.
NIMMONS, J., CONCURS; ZEHMER, J., DISSENTS W/WRITTEN OPINION.
ZEHMER, Judge (dissenting).
While I agree, for the reasons stated in the court's opinion, that there is no need for a bad faith determination, I would reverse and remand for a redetermination of the amount of the fee. Section 440.34(1), Florida Statutes, governs the determination of the amount of the fee in this case. It provides for a contingent fee based upon a formula generally referred to as 25/20/15.[1] *591 The statutory scheme contemplates that the fee calculated under the formula shall first be determined, then the factors will be considered and evaluated with a view to increasing or decreasing the formula amount upon findings of fact and an explication of the reasons for such adjustments up or down.
The deputy commissioner found on the evidence presented to him that the present value of the benefits recovered by claimant's attorneys was $5,085,362. The fee calculated under the statutory formula is $763,554. Although the deputy commissioner analyzed each of the factors in Lee Engineering and section 440.34(1), the order contains no explanation showing why the statutory formula fee should be reduced so drastically. Yet it is well established that this explanation is required. In Tenneco, Inc. v. Giese, 544 So.2d 1099 (Fla. 1st DCA 1989), we explained:
In establishing the amount of the fee the deputy noted the number of hours expended by claimant's attorney, and determined the resulting fee in accordance with an hourly rate. The deputy's order does not adequately address the other criteria described in section 440.34(1), Florida Statutes. While a fee order may not always need to expressly address every one of these criteria, cf., Haucke v. Oxford Development, 507 So.2d 712 (Fla. 1st DCA 1987), the order should generally reflect the deputy's consideration of these factors, and must indicate the basis for a fee award which departs from the statutory percentage formula. See Florida Power & Light Co. v. Haycraft, 421 So.2d 674 (Fla. 1st DCA 1982). In the present case the deputy awarded an amount which is nearly three times that which would result from the statutory percentage formula. Although the attorney's "time and labor" is one of the statutory factors to be considered, this court has disallowed other departures from the percentage formula when based solely upon the number of hours expended. See e.g., Brevard County Mental Health Center v. Kelly, 420 So.2d 911 (Fla. 1st DCA 1982). In the context here presented, the deputy's order does not reflect a sufficient consideration of the section 440.34(1) attorney's fee criteria, nor does it delineate an adequate basis for exceeding the amount which would result from the statutory percentage formula.

544 So.2d at 1100 (emphasis added). Certainly, the same delineation must be set forth to justify a downward departure from the percentage formula.
A review of the order before us reveals that the deputy commissioner's consideration of the statutory factors is predicated primarily on his personal opinions rather than on the evidence in the record. More importantly, the order fails to indicate which, if any, of the factors justify a substantial downward departure.
In considering the factors of time and labor involved, the novelty of the questions involved, and the skill required to present the case, the deputy commissioner seemingly rejected the expert testimony before him and expressed his own opinion of the work necessary to prosecute the claim; he cites to no evidence of record, and does not identify any other cases in his experience that would demonstrate that this case was not novel, was no different from the ordinary compensation claim case, and that the medical issues were not unique. But even after so stating, the deputy commissioner does not indicate that any of these three factors requires a substantial reduction in the formula fee amount, much less why.
With respect to the factor of precluded employment by accepting representation in this case, the deputy commissioner merely concludes that "The fee should not be increased because of this factor." (Emphasis added.)
Similarly, after reviewing a range of hourly fees in the locality ($85 to $250 per hour), the deputy commissioner's only conclusion is that "the hourly rate is only one factor to be considered and attorneys should not be restricted to such a rate if other variables point to the assessment of a *592 fee which nets more per hour"; nothing is said about reducing the statutory formula amount on account of this factor.
Addressing the amount involved and the benefits recovered, the deputy commissioner, after having found the present value to be in excess of $5 million, expresses a personal concern that it was necessary to evaluate the benefits "over the next 47 years" and, characterizing this as speculative, concludes that "The recovery figure should not be given undo [sic] weight... ." This manipulation of the present value figures was plain error. If the previously found amount for "benefits secured" was not supported by the evidence, and thus was believed to be unreliable, the deputy commissioner should not have found it as a fact in the first place. Under section 440.34(1), it was his duty to determine the dollar value of the benefits secured, make a finding of fact thereon, and then apply the statutory formula to determine the amount of the statutory fee. If the value of the benefits was too speculative, as the deputy commissioner suggested in disregarding this factor, he should have reduced the amount of the benefits to a value that was proven by the evidence and calculated the statutory formula fee on that value. In any event, it was error for the deputy commissioner to make the statutorily required finding of fact and then disregard it for the stated reason it was too speculative and "should not be given undo [sic] weight in the opinion of this fact finder." The method and manner of proving past and future pecuniary damages (no pain and suffering damages were involved here) is well established in the law and by principles of economics and statistical analysis. The deputy's order recited that the evidence adduced and the statistical calculation (which was not in dispute) supported the present value he found. It was, therefore, a gross abuse of discretion to thereafter disparage the value so found in deference to the deputy commissioner's own personal feelings about these recognized procedures, and disregard the evidence supporting the present value he had found as a fact. If the deputy commissioner did not accept as credible the evidence presented as to the value of the benefits secured, he should have made a factual determination of the value acceptable in his opinion, explicating why, so that the parties could then secure appellate review of the figure so determined. It was clear error for him to ignore this statutory requirement by giving it little or no weight.
Finding no evidence that the time limitation or handling of this claim precluded claimant's attorneys from handling other matters, the deputy commissioner gave this factor "minor importance in the assessment of a fee." Thus, this factor essentially was not found to justify enhancing or reducing the statutory formula amount.
Addressing the factor based on the nature and length of the professional relationship, the deputy commissioner ruled that the fact that this "was a one time professional relationship" should "not appear to weigh one way or the other in the assessment of a reasonable fee." This ruling reveals a lack of understanding of the economics of litigation practice, and it was not substantiated on the record. Nor does it comport with common sense. It is widely recognized that one of the more significant factors in setting a reasonable attorney's fee is whether the client is on a retainer or continuing basis and will require continuing services in the future, or whether the case is a one-time representation, after which no further work will be performed for the client. Customarily the fee set in the former case is at a lower rate than the fee set in the one-time representation, for reasons that are obvious. I simply cannot approve the deputy commissioner's determination not to give any weight to this factor "one way or the other." In any event, however, the deputy commissioner's order leaves this factor completely neutral, so it does not justify any adjustment up or down from the statutory formula fee.
Addressing the factor regarding the experience, reputation, and abilities of the attorneys representing claimant, those attorneys were said to be excellent; they were found to "probably have more experience than many other practitioners in the field of occupational disease and chemical *593 exposure" and thus "their compensation should be more than what may normally be charged to the public." This factor was obviously not found to justify a reduction of the statutory formula amount, but to enhance the fee.
Finally, the deputy commissioner recognized that the fee was contingent, and that the multipliers suggested in Florida Patients Compensation Fund v. Rowe, 472 So.2d 1145 (Fla. 1985), do not apply because the statutory fee formula in section 440.34(1) is applicable, citing What an Idea v. Sitko, 505 So.2d 497 (Fla. 1st DCA 1987). Obviously, this factor did not justify a downward departure from that statutory calculation.
In summary, nothing stated by the deputy commissioner in his analysis of any of the statutory factors indicated any basis for a substantial reduction of the statutory formula fee by more than one half. The fee awarded is well under the contingency percentages set by the statute without any explication of why this amount is more reasonable than the statutory percentage. Only the deputy commissioner's feeling based on "exercising my own independent judgment, and weighing the variables" is cited as the reason. I fully recognize that a deputy commissioner exercises a broad discretion in determining the amount of an attorney's fee award, but that discretion must be exercised in accordance with the statute and in a manner that accomplishes the statutory intent to establish a uniform basis for setting the amount of contingent fees in worker's compensation cases based on the statutory formula. I am convinced that this was not done in this case and therefore dissent.

ON REHEARING DENIED
WENTWORTH, Judge.
The appellant/claimant again contends by motion for rehearing that, on the issue of self-insured employer's alleged bad faith, the judge had no authority to find mootness based on a stipulated alternative predicate for an attorney's fee. We adhere to affirmance on this issue because neither of appellant's two arguments on this point supports our mandating a determination on the merits of the issue. Such a mandate would, in our opinion, require appellant to show that resolution of the bad faith issue remained necessary to disposition of some claim pending before the judge of compensation claims, or that his resolution of the issue would effect or bring about some legal result different from the fee award based on stipulated liability on other grounds.
Appellant asserts a purely collateral consequence by noting the "possibility that a cause of action might exist by the Employer/Self Insured against the adjusting firm which was responsible for the bad faith." A bad faith determination by some other forum might indeed accord such relief, which appellant asserts might thereby "decrease the costs of Florida's Workers' Compensation system which was a stated legislative intent when the 1979 changes were enacted." But we find nothing in the statute which contemplates that a judge of compensation claims shall, in effect, accord declaratory relief as to facts which may or may not properly bind another forum. The decisions in favor of finding alternative grounds for fees, as noted in our original opinion, rest on the theory that different legal results flow therefrom. Because the trial judge had authority in this cause only to adjudicate claims under Chapter 440, Florida Statutes, we conclude the "different legal results" must be legal results under Chapter 440 flowing from his disposition of the claim before him.
Appellant next asserts that the function of the judge of compensation claims under Chapter 440 should also "include the rooting out of self insureds' bad faith as a part of the over all program," citing Florida Erection Services, Inc. v. McDonald, 395 So.2d 203 (Fla. 1st DCA 1981). In Sam Rogers Enterprises v. Williams, 401 So.2d 1388, 1391 (Fla. 1st DCA 1981), this court rejected an argument that section 440.34(3)(b) (formerly 440.34(2)(b)) was primarily intended to be a penalty provision, and noted that section 440.34(3)(b) "does no more than reimburse the claimant for expenses incurred in the assertion of his right *594 to benefits," citing McDonald at 208. Section 440.34(3)(b) is therefore unlike the punitive provisions contained in sections 440.20(7)(9) and (16) which provide for penalties, interest and suspension or revocation of an operating license in cases where the employer or carrier either delays payment of compensation or engages in questionable claims-handling techniques.
A clear collateral consequence of a bad faith finding by a judge of compensation claims is that a carrier may not recoup (either directly or indirectly) the payment of the attorney's fee in the rate base, the premium, or any rate filing. Section 440.34(3). We recognize that the definition of "carrier" in section 440.02(3) includes a self-insurer, and therefore any carrier provision may facially apply to self-insurers. As described by section 440.38(1)(b), a "self-insurer" is an employer who pays workers' compensation directly and is subject to depositing securities with the state in an amount sufficient to insure the prompt payment of that compensation. Such a self-insurer may also be required to carry reinsurance to insure its actuarial soundness. Further, under section 440.385, such a self-insurer may incur a cost in belonging to the Florida Self-Insurers Guaranty Association, Inc. But we are referred to no regulatory provision involving a premium charged by a self-insurer, or any rate base or rate filing. Those provisions would therefore have no impact on them. When, as in this case, the judge is presented with a stipulated alternative statutory ground for award of a fee, i.e., controversion, we find no collateral consequence incident to a bad faith claim which would compel a judge of compensation claims to make that determination which is not necessary to the decision on award of a fee on the alternative statutory ground.
Rehearing is denied.
NIMMONS, J., concurs.
ZEHMER, J., dissents with written opinion.
ZEHMER, Judge (dissenting).
In my original opinion, I concurred with the majority in holding that there is no need for a bad faith determination because the fee awarded against the employer and its servicing agent posed no potential for collateral consequences. For reasons pointed out in the motion for rehearing, I now conclude that this holding is erroneous.
The employer in this case is a self-insurer who administered this claim through its authorized servicing agent. Section 440.02(3) defines "carrier" as including "a self-insurer." Section 440.34(3)(b) authorizes the award of an attorney's fee upon a finding that the carrier has acted in bad faith. The word "carrier" as used in this section necessarily includes an employer/self-insurer acting through its authorized servicing agent. When a fee is awarded for bad faith, the payment thereof "may not be recouped, directly or indirectly, by any carrier in the rate base, the premium, or any rate filing." § 440.34(3)(c), Fla. Stat. (1987). In the case before us, if the fee awarded to claimant could be predicated on a determination of bad faith, the fee could not be recouped by the employer/self-insurer. This means that there is a clear "potential for collateral consequences" within the meaning of the cited decisions on page 6 of the majority opinion, thus requiring a determination of the employer/carrier's bad faith on remand. The holding in the majority opinion, as the motion for rehearing so aptly points out, is based on a construction of section 440.34 that the self-insured employer should not be treated as a carrier under this section, and thus would excuse all self-insured employers and their servicing agents from liability for bad faith attorney's fees. I cannot subscribe to this result as being within the intent of the bad faith statute.
I would, therefore, grant rehearing, reverse the appealed order, and remand for further proceedings.
NOTES
[1] This section provides in part:

Except as provided by this subsection, any attorney's fee approved by a deputy commissioner shall be equal to 25 percent of the first $5,000 of the amount of the benefits secured, 20 percent of the next $5,000 of the amount of the benefits secured, and 15 percent of the remaining amount of the benefits secured. However, the deputy commissioner shall consider the following factors in each case and may increase or decrease the attorney's fee if, in his judgment, the circumstances of the particular case warrant such action... .