566 So.2d 537 (1990)
TRI-STATE MOTOR TRANSIT COMPANY, and Transport Insurance Company, Appellants,
v.
William JUDY, and Division of Workers' Compensation, Appellees.
No. 89-2737.
District Court of Appeal of Florida, First District.
August 6, 1990.
Rehearing Denied September 6, 1990.
*538 Carey L. Moreland, and George A. Helm, III of Eubanks, Hilyard, Rumbley, Meier & Lengauer, P.A., Orlando, for appellants.
Marshall S. Adler of Adler & Strickland, P.A., Orlando, for appellees.
SHIVERS, Chief Judge.
The employer/carrier (E/C) appeal parts of an order that award and quantify past attendant care benefits and quantify attorney's fees. We affirm the award of past attendant care benefits and their quantification but reverse and remand the quantification of attorney's fees.
On November 24, 1983, claimant suffered a severe, bone crushing injury when, during an attempt to close a telescoping stretch of a tractor trailer rig, his head became pinned in the trailer resulting in multiple skull fractures, cranial nerve paralysis, and a cerebral spinal fluid leak through his nose.
Beginning in January 1984, the E/C paid for various visiting nurses and paid for attendant care provided intermittently by claimant's then wife, Joyce Judy, and claimant's mother and father.
Later in 1984 claimant and Joyce Judy were divorced and claimant moved to Orlando where his mother and father helped take care of him. Subsequently, claimant married Jean Judy, a rehabilitation nurse who had been taking care of claimant, and they moved to the Seattle, Washington area. At hearing, claimant testified that Jean Judy did not get paid for her attendant care services.
Claimant and Jean Judy were separated in June 1988 and after that claimant's son provided uncompensated attendant care. Claimant eventually moved in with Bonnie Tobias who runs a small thrift shop business in the Seattle area, and at the time of hearing she was taking care of claimant's needs.
A number of doctors and counselors testified as to claimant's need for attendant care services from 1984 to present including Dr. Boll, a neuropsychologist, Dr. Ginsberg, a neurologist, Dr. O'Connor, who specializes in physical medicine and rehabilitation, and Ms. Mott, claimant's rehabilitation counselor. Their opinions constituted competent, substantial evidence upon which the Judge of Compensation Claims (JCC) could rely in awarding past attendant care benefits.
The E/C argue, essentially, that because claimant's family and outside nurses received payment for attendant care services in 1984, their and claimant's failure to request such services afterwards prejudiced them in their obligation to continuously monitor claimant's need for these services. We disagree. The focus of the notice concept to which the E/C allude is on a claimant's failure to request payment for services; whether the E/C were prejudiced by the various providers' failure to request payment for services is irrelevant.
Under section 440.13(2)(b), Fla. Stat. (1983), a claimant shall not be entitled to recover any amount personally expended for attendant care treatment unless he has requested the employer to furnish it and the employer has "failed, refused, or neglected to do so or unless the nature of the injury required such treatment... and the employer ... having knowledge of such injury, has neglected to provide the same." Nothing in this section or in any part of the Workers' Compensation Act places the onus of requesting services on third parties, or, on the other hand, obliges the E/C to inform and monitor anyone other than the injured employee.
In Walt Disney World Co. v. Harrison, 443 So.2d 389, 393-94 (Fla. 1st DCA 1983) (citations omitted) we wrote:

Ordinarily, a claimant should know whether she needs attendant care... . But unless claimant knew that such services would be provided under the act, how could she be expected to make such a request?
... [A]n employer must offer or furnish benefits when the employer knows, or should know from facts properly and diligently investigated, that such benefits *539 are due. An employer is under a continuing obligation, once it has knowledge of an employee's injury, to place needed benefits in the hands of the injured worker. This obligation cannot be met unless the employer informs the injured worker of the benefits to which he or she is entitled.
(emphases supplied).
In 1984, the bulk of the E/C's attendant care payments went for care provided by non-family members, with a fraction of the payments going to claimant's wife at the time, Joyce Judy. Claimant and Joyce Judy were later divorced, and claimant received attendant care from his parents and later from other non-family attendants, none of whom were compensated by the E/C. It is understandable then that as a result of this discontinuity in caretakers, claimant's later caretakers might not have realized they were entitled to payment from the E/C.
Claimant argues that the nature of his injuries  severe trauma to the brain  precluded him from effectively understanding his entitlements under the Act. Ample expert testimony, particularly that of Dr. Boll, supports his assertion and supports the JCC's agreement with it. Even if claimant was aware in 1984 that he was entitled to attendant care benefits, the record supports the finding that claimant lacked the mental sophistication to request attendant care services from the E/C after that time.
Given claimant's pardonable imperceptiveness, the E/C's failure to diligently ascertain his needs in this case is a pointed departure from their obligation under the Act to continuously monitor, inform, and provide treatment to the claimant. Their failure is plain in light of the severity of claimant's injuries and in light of their involvement in federal litigation stemming from this accident in which they succeeded in having this accident declared a workers' compensation matter.
As to the quantum of attendant care benefits, the parties presented affidavits and memoranda of law in which they represented what the reasonable value of past attendant care benefits were. The JCC's finding of $223,434 appears to be a compromise between these representations and we see no basis, as a result, for finding an abuse of discretion. In addition, the order properly excludes all paid hospital visits as well as the period the E/C paid attendant care.
In determining the appropriate attorney's fee, section 440.34, Fla. Stat. (1983) requires that in each case the JCC consider the Lee Engineering & Construction Co. v. Fellows, 209 So.2d 454, 458-59 (Fla. 1968) factors, as set out in the statute, and it states he "may increase or decrease the attorney's fee if, in his judgment, the circumstances of the particular case warrant such action... ." Fla. Stat. § 440.34(1) (1983). In this case the JCC considered each of the Lee Engineering factors at length and found no reason to depart from the statutory fee schedule.[1] As we have discussed in other cases, the statutory fee schedule embodies a legislative intent to standardize the method for assessing fees; departures from its percentage formula should be made only in exceptional circumstances. Prestressed Decking Corp. v. Medrano, 545 So.2d 403 (Fla. 1st DCA 1989); Fumigation Department v. Pearson, 559 So.2d 587 (Fla. 1st DCA 1989). Accordingly, we find that the JCC did not abuse his discretion in declining to depart from the fee schedule.
We are concerned, however, with the JCC's method in arriving at the fee. To determine the fee based upon the percentage of benefits claimant's counsel obtained, the JCC appropriately added together claimant's retroactive attendant care benefits of $223,434, and the values of claimant's future permanent total disability (PTD) plus supplemental benefits and future attendant care benefits. We find merit *540 in the E/C's argument that the JCC erred in quantifying future attendant care benefits for fee purposes, but we find no error in the balance of the JCC's future benefit valuation method.
First, as to valuation of future PTD benefits for fee purposes, the JCC established claimant's life expectancy at 32.7 years by using the United States Life Tables. He then multiplied claimant's annual compensation rate by 32.7 and, using the statutory eight percent discount rate, he reduced that figure to a present day value of $252,393.11. The discount rate derives from sections 440.20(12) & (13), Fla. Stat. (1983).[2] These sections pertain to lump sum advances but the rate indicated in them has also been customarily applied to attorney's fee computations when the fees are either partly or wholly based on future benefits. E.g., Locke v. Rooney, 508 So.2d 467 (Fla. 1st DCA 1987); see also J. Feuer Florida Workers' Compensation Practice, section 4.19, Attorney's Fees (3d ed. 1986).
In determining the value of claimant's future attendant care benefits to arrive at a fee, the JCC declined to reduce them to a present value figure. Finding nothing in the law to require such a reduction, the JCC explained that attendant care benefits are subject to reduction or increase in the future and as such are speculative. Claimant's counsel, on the other hand, argued that the cost of attendant care is certain to increase, citing ten to twelve percent annual inflation in the cost of medical services. The JCC found that to follow this argument would result in too great an award. He concluded that "it seems to be a wash." Thus, as to that part of the fee based on future attendant care, the JCC simply used the absolute value of the attendant care benefits, which he calculated to be $1,642,586.40, without reducing the amount to present value or taking inflation into account.
It is evident that in quantifying future medical benefits for the purpose of determining a fee, it has been common practice to reduce those benefits to present value, but to also take inflation into account. See What an Idea, Inc. v. Sitko, 505 So.2d 497 (Fla. 1st DCA 1987) (where the JCC's methodology was not at issue but his order describing such was set out in the opinion). More specifically, the quantification of future attendant care benefits has apparently been approached the same way. See Fumigation Department v. Pearson, 559 So.2d 587 (Fla. 1st DCA 1989). As in Sitko, the JCC's methodology was not at issue in Fumigation Department; but in that case we noted that the JCC reduced future attendant care to present value by applying the eight percent discount factor. However, he also increased the value by assigning an inflationary index of 7.53 percent annually. In doing so he described the attendant care services as "services by other medical professionals."
Attendant care benefits can be, and often are, provided by medical professionals. However, we do not believe they should be considered similar to other medical benefits when their future value is quantified for the purpose of determining an appropriate attorney's fee. Instead, we agree with the E/C's argument that, when quantifying future benefits for fee determination purposes, inflationary factors should be considered only when future costs are uncertain. Uncertainty in future costs is a result of the number of variables that bear on those costs. As the number of variables bearing on a future cost increases, more variables will have to be considered in arriving at the most accurate estimate of a future cost. With medical benefits, the uncertainty of their future value is the result not only of myriad variables in treatment needs, recovery and palliation, but also of the vitality and the element of uncertainty that characterize medical science itself. Attendant care, on the other hand, does not share the latter characteristics with medical science. Further, the number *541 of daily attendant care hours to which a claimant is entitled, and the rate of compensation the care provider will be paid, are values certain at the time of an order's rendering. Even though those values are subject to change through a meritorious petition for modification, that fact does not diminish their presumptive correctness, and it does not attribute the claimant's attorney with having achieved more than what was actually achieved. Indeed, to include an inflation factor in quantifying future attendant care benefits is to pay claimant's attorney now for speculative, inflation-driven increases in attendant care compensation. Arguably, this may vitiate entitlement to fees for any subsequent representation that resulted in actually winning an increase in the compensation rate.
In the instant case the JCC awarded claimant twelve hours attendant care per day at $11.50 per hour, with provision for a case manager each month also. We reverse this case to the JCC for recalculation of the attorney's fee by reducing the absolute value of the future attendant care benefits, as found in the order, to present value, and by not considering inflation in these benefits' valuation. We affirm the balance of the order.
AFFIRMED in part, and REVERSED and REMANDED in part.
BOOTH and WOLF, JJ., concur.
NOTES
[1] Twenty-five percent of the first $5,000 of the amount of the benefits that the claimant's attorney is responsible for securing, twenty percent of the next $5,000 of the amount of the benefits secured, and fifteen percent of the remaining amount of the benefits secured. Section 440.34(1).
[2] The applicable statutory discount rate is governed by the time of accident. Cone Bros. Contracting v. Gordon, 453 So.2d 420 (Fla. 1st DCA 1984). The date of accident in the instant case was November 24, 1983. The legislature increased the statutory discount rate from four percent to eight percent in 1983; and it set the amendment's effective date at June 30, 1983. Id. Thus the appropriate rate here is eight percent.